## NORRIS v. SCHUYLER et al.

*(Common Pleas of New York City and County, General Term.* April 1, 1889.)

MORTGAGE—WHAT CONSTITUTES.

   A deed absolute, intended to secure the grantees for the claims they already held, as well as for future advances, and a contemporaneous agreement executed by the grantees and called a "declaration of trust," in which they style themselves "trustees," reciting the terms and conditions on which they are to hold and manage the property, and reconvey it to the grantor, and showing their object to be simply to get security in the best manner for the payment of their claims, and reimbursement for their expenses, etc., constitute a mortgage, and not an express trust.[1]

Appeal from judgment on report of referee.

The following is the opinion of the referee: "The plaintiff, as assignee of Sayre & Vanderhoof, brings this action to foreclose a mechanic's lien for $419.20 upon buildings on the south-east corner of Ninety-Eighth street and Third avenue, in the city of New York. The notice of lien was filed and docketed in the county clerk's office on the 1st day of June, 1887, against John M. Schmidt, as owner. The claim under which the lien was filed was for the value of certain lime sold by Sayre & Vanderhoof to Schmidt, and which was used by him in the construction of the buildings referred to. The lime was delivered at different times between the 15th day of March, and the 12th of May following. The defendants, Schuyler, Nesbit & Mehrhoff, claim that the lien in question never attached to the premises, and show that on the 12th day of May Schmidt and wife executed and delivered to them a warranty deed of the premises, which was duly recorded on the same day in the office of the register of the city and county of New York. This deed is absolute on its face, and was recorded as a conveyance. Contemporaneous with the deed there was executed an instrument between Schmidt, as party of the first part, and Schuyler, Nesbit & Mehrhoff, as parties of the second part, declaring the purposes for which the deed was given. This instrument was never recorded. By the counsel for the defendants it is termed a ʻtrust agreement,' and by its terms the parties of the second part acknowledged that ʻthey receive the title to said property as trustees for the party of the first part.' It is agreed that the deed and this agreement must be taken together in arriving at the effect of either. The plaintiff contends that the only effect was to create a mortgage in favor of Schuyler, Nesbit & Mehrhoff, as security for an indebtedness to them from Schmidt, leaving the title in him, to which this lien would attach. The counsel for defendants claim that an express trust was created, whereby Schuyler, Nesbit & Mehrhoff had the title at the time of filing of the lien against Schmidt.

"Let us look at the terms of the so-called ʻtrust agreement.' It recites that Schmidt is the owner of the lots; that they are incumbered by purchase-money mortgages, amounting to $75,000, and a mortgage for future advances for $44,000, to be advanced as the buildings progress; that the buildings are now being erected by Schmidt, under an agreement with one Guggenheimer, which provided for the payment of the $44,000 by Guggenheimer in different sums, as the buildings progressed; that Schmidt, with his wife, had executed a contemporaneous deed of the premises to the parties of the second part; and that he had assigned to them the contract with Guggenheimer, ʻall for the pur-

---

[1] As to when an absolute deed will be held to be a mortgage, see Chandler v. Chandler, (Iowa,) 41 N. W. Rep. 319, and note; Connor v. Atwood, post, 561, and cases cited.

pose of procuring the aid and assistance of the parties of the second part to finish and complete the buildings now being erected on said premises according to contract, and according to the plans and specifications thereof.' By the first paragraph Schmidt agrees that he will proceed with all possible expedition to complete the erection of the buildings, so as to secure the approval of the architect, and agrees to complete them by July 1, 1887, the parties of the second part receiving all payments to be advanced by Guggenheimer, and supplying all necessary means and materials therefor. By the second paragraph Schuyler, Nesbit & Mehrhoff agree that they will supply materials and means to have the buildings completed by the time aforesaid, and furnish any additional means required therefor beyond the amount to be received from Guggenheimer. By the third paragraph they agree to furnish and purchase the supplies for finishing the houses upon consultation with Schmidt as to prices, and to pay every expense after the date of the contract in connection therewith. The fourth paragraph requires them to keep books in which shall be entered every expenditure made by them under the contract, etc., so as to clearly and intelligibly show the true state of accounts from that time forward to the completion of the buildings. The fifth paragraph gives to them the right to decide as to the kind or character of materials, or any other matter not theretofore provided to be decided by the architect in case there shall be a difference of opinion between them and Schmidt. The sixth paragraph provides that on the completion of the buildings, if a loan can be negotiated large enough to pay off all mortgages and all claims of Schuyler, Nesbit & Mehrhoff, or their firms, against Schmidt, then simultaneously with the closing of such loan they and their wives shall make to Schmidt a bargain and sale deed of the premises, and the latter shall execute the bonds and mortgages for the permanent loan, and the money so procured shall be paid over (presumably by Schmidt)—*First*, to pay the prior mortgages on the premises; and, *second*, to reimburse all moneys advanced by Schuyler, Nesbit & Mehrhoff, and any debt owing by Schmidt to them, or either of them, or their firms. The seventh paragraph recites the amounts for which Schmidt is indebted on account of the buildings to Schuyler, Nesbit & Mehrhoff, or their firms, respectively, and provides that the first moneys required to be advanced beyond the Guggenheimer loan should be advanced by those of them holding the smaller claims against Schmidt, and to equalize their respective claims against him. The eighth paragraph provides for the keeping of proper books of account as between Schuyler, Nesbit & Mehrhoff, ' which shall at all times show fully their interest in the premises,' and for the keeping of a bank-account in the name of Mr. Schuyler, as trustee, ' wherein shall be deposited all moneys received by them on account of the said premises, and from which all moneys paid on account of the said buildings, materials, and expenditures thereon, shall be drawn and disbursed.' The ninth paragraph states that at the time of reconveying said premises to Schmidt, and the payment to parties of second part (Schuyler, Nesbit & Mehrhoff) of all indebtedness, advances, and disbursements, they shall each be allowed $1,000 for their services in the matter. By the tenth paragraph Schuyler, Nesbit & Mehrhoff acknowledge that they receive the title as trustees for Schmidt, and that they will return to him all realized after having been fully paid. The eleventh clause authorizes a sale of the premises by Schuyler, Nesbit & Mehrhoff, (if the requisite loan cannot be procured by June 20, 1887,) and the payment of the mortgages and their claims out of the proceeds. These are the terms of the agreement, which, it is claimed, constitute an express trust under either of the first two subdivisions of section 55, c. 1, pt. 2, of the Revised Statutes, (3 Rev. St., 7th Ed., 2181.) If this instrument creates a trust either ' to sell lands for the benefit of creditors,' or ' to sell, mortgage, or lease lands   *   *   *   for the purpose of satisfying any charge thereon,' it uses a most unusual form of words in doing so. It strikes my mind as being nothing more or less than an ordinary

contract between parties, in which each assumes covenants and obligations in favor of the other, and for the benefit and advantage of both. If there is a trust, who is the *cestui que trust*, and who the trustee? The agreement says that Schuyler, Nesbit & Mehrhoff take the title as trustees for Schmidt. If that be true, how can they claim that they took it as trustees for the mortgagees and for themselves as his creditors?

"Again, the statute authorizes an express trust to sell lands for the benefit of creditors. I think this means creditors existing at the time. It appears that at the time of the agreement, May 12th, Schuyler, Nesbit & Mehrhoff had claims against Schmidt, amounting together to about $12,600, for materials, and that they subsequently advanced about $9,700 under the terms of the agreement. To the extent of this last-named sum they cannot be said to have been creditors of Schmidt at the time of the making of the alleged trust agreement. Yet it is plain that that instrument was intended to secure the payment of these subsequent advances, as well as those previously made. That intention could not be carried into effect upon the theory of an express trust 'to sell lands for the benefit of creditors,' even if the purpose of the agreement was to give Schuyler, Nesbit & Mehrhoff power to sell. But their authority to sell was limited as to the time of its exercise, and has never been exercised. The agreement shows that it was not to be resorted to in any event, except in case of a failure to obtain the necessary loan. Upon the theory of a mortgage, however, the agreement could and did give Schuyler, Nesbit & Mehrhoff security for the subsequent advances. The same agreement shows that there could be no trust 'to sell, mortgage, or lease lands for the purpose of satisfying any charge thereon.' It does not appear that any of the advances made by Schuyler, Nesbit & Mehrhoff, before the making of the agreement, were made a charge or lien on the premises, by the filing of a mechanic's lien, or otherwise. And in the nature of things, those subsequently made by them could not be a charge or lien thereon, nor even an indebtedness against Schmidt. The payment of the prior mortgages provided for in the agreement was not at all the purpose, or one of the purposes, for which the agreement was made, and I do not think the holders of those mortgages, under the terms of the agreement, would have any right to demand that their mortgages be satisfied as a charge on the land. I view 'their payment simply as a means whereby the payment of the other claims is made possible under the agreement, and not its object or purpose. The agreement proceeds on the assumption that the preceding advances made by Schuyler, Nesbit & Mehrhoff to Schmidt, will continue to be an indebtedness or claim against him, and that the future advances will serve simply to increase his indebtedness. The object of the parties was simply to get security, the best they could obtain from Schmidt, for the payment of their claims, and to reimburse them for their time and trouble in the matter. A case not unlike this, in many respects, is *Trust Co.* v. *Carroll*, 5 Barb. 613, where this subject will be found exhaustively discussed. An agreement was there executed by the grantee contemporaneously with the taking of the deed. It was claimed that the transaction was a trust, and it was so denominated in the instrument itself. The court held that 'every provision of the agreement may be referred to and brought within these two objects,' namely, to advance credit and receive back the amount advanced, with interest, and that there was a mortgage, and no trust and no power in trust. I think this can be said of the agreement in this case, and I hold that the deed and agreement together constituted a mortgage to secure the parties for past claims and future advances, leaving the title in Schmidt on June 1, 1887, when this lien was filed. Section 3, c. 3, pt. 2, of the Revised Statutes; 3 Rev. St. (7th Ed.) 2216; *Odell* v. *Montross*, 68 N. Y. 499; *McBurney* v. *Wellman*, 42 Barb. 390; *McAuley* v. *Mildrum*, 1 Daly, 396. The failure to record the deed and agreement together as a mortgage had the effect of postponing them to the lien of Sayre & Vanderhoof. It is

probably unnecessary to decide this last, however, as the lien itself has been replaced by a bond. The plaintiff is entitled to judgment, with costs."

Argued before LARREMORE C. J., and DALY and VAN HOESEN, JJ.

*Brown & Dexter*, for appellants. *William Stone*, for respondent.

PER CURIAM. The deed executed by Smith to Schuyler, Nesbit & Mehrhoff was intended to secure the grantees for the claims they already held, as well as for their future advances, and, taken in connection with the defeasance, which is called a "declaration of trust," is to be regarded as a mere mortgage. The intention of the parties seems to us so plain, and the instruments seem so free from difficulty as to their meaning, that we do not feel justified in entering upon any discussion of the grounds on which our conclusion is founded. The judgment should be affirmed, with costs.