MARIA A. LEWIS, Appellant, *v.* JULIA R. DUANE, Individually, and as Administratrix, etc., of PATRICK H. DRAKE, Deceased, and as Executrix, etc., of JANE E. DRAKE and VIRGINIA M. DRAKE, Deceased, Respondent.

*Mortgage — statutory foreclosure — right of redemption — property purchased by the mortgagee — no trust created in favor of the mortgagor — admissions by an attorney.*

On the foreclosure, by advertisement under the statute, of a mortgage containing a power of sale, given to secure commercial paper of the mortgagor indorsed by the mortgagee, and advances to satisfy judgments, the amount due inserted in the notice of foreclosure was the principal sum mentioned in the mortgage, with interest.

The property was bought in by the mortgagee and by his attorney for sums which aggregated less than the mortgagee's payments and advances secured by the mortgage, which were themselves less than the principal of the mortgage.

In an action brought by the mortgagor to redeem, claiming that the foreclosure was inoperative,

*Held,* that, in the absence of averments of fraudulent intent and evidence that the amount inserted in the notice was swollen for a fraudulent purpose beyond the indebtedness of the mortgagor, the foreclosure should not be declared inoperative, nor should it be held that the statutory sale and the power of sale in the mortgage did not cut off the legal rights of the mortgagor, who had personal notice of the foreclosure sale and who had acquiesced therein and yielded up possession to the purchasers.

At the time of making the mortgage an instrument was executed, as part of the transaction, which stated that the mortgagee, in taking the mortgage, only desired to secure himself for the amount of his liability as indorser for the mortgagor and for the advances he was to make in satisfying judgments, and that anything more than this was not contemplated by him, and that when the

amount of such liability and advances was ascertained or liquidated the mortgagee was to indorse the same or reduce the mortgage to the true amount so advanced by him.

*Held*, that this instrument did not make such ascertainment or liquidation a condition precedent to the right to foreclose (MARTIN, J., dissenting);

That the mortgage and this instrument read together did not operate to place the legal title to the mortgaged property in the mortgagee, and that he did not by force thereof become a trustee of the mortgaged real estate, nor did the papers create an express trust;

And, hence, that although the mortgagor might have required an ascertainment of the amount of the mortgagee's liability and advancements, and its indorsement on the mortgage at any time before foreclosure, he was not entitled to an accounting after the sale, of which he had notice and in which he had acquiesced, on the ground that a trust as to his real property had been created;

That, under the circumstances of the case, it was immaterial whether the mortgagor was or was not present at the foreclosure sale, it appearing that he had notice of the time and place thereof.

Evidence to establish the fact that the purchaser at a foreclosure sale consented to hold the property acquired thereby, as a security merely, must be clear, unequivocal and convincing.

A declaration of an attorney, made at the time of the service of papers under a statutory foreclosure upon the mortgagor, is not admissible in evidence so as to bind his client, unless made within the scope of the attorney's authority (MARTIN, J., dissenting).

APPEAL by the plaintiff, Maria A. Lewis, from a judgment of the Supreme Court, entered in the office of the clerk of Broome county on the 14th day of September, 1891, upon the report of a referee, dismissing the complaint upon the merits.

The action was begun September 1, 1883, by Frederick Lewis and Maria A. Lewis against Virginia M. Drake and Julia R. Drake, as the heirs, legatees, devisees and representatives of Patrick H. Drake and also of Jane E. Drake, his wife. It was an action brought for an accounting and to redeem certain lands formerly owned by Frederick Lewis, and which were covered by a mortgage executed by him and his wife to Patrick H. Drake, who, in 1875, foreclosed the mortgage by advertisement and bid off the larger portion of the property himself, one parcel having been purchased by Giles W. Hotchkiss at the foreclosure sale. In June, 1873, Frederick Lewis, then a resident of the city of Binghamton, was the owner of the real estate covered by the mortgage in question, and he, with his wife, executed a mortgage to Patrick H. Drake in the nominal sum of $60,000, the mortgage containing a clause that it was given " as a

security for the payment of the sum of $60,000 one year from date, with interest." It also contained the clause: "And in case default shall be made in the payment of the principal sum hereby intended to be secured, or in the payment of the interest thereof, or any part of such principal or interest, as above provided, it shall be lawful for the party of the second part,          executors, administrators or assigns, at any time thereafter, to sell the premises hereby granted, or any part thereof, in the manner prescribed by law, and out of all moneys arising from such sale, to retain the amount then due for principal and interest, together with the costs and charges of making such sale, and the overplus, if any there be, shall be paid by the party making such sale on demand to the said Frederick A. Lewis and Maria A. Lewis, their heirs and assigns." The mortgage was recorded on the 4th day of June, 1873, in Liber 51 of Mortgages, page 152. On the 4th day of June, 1873, the mortgagee in said mortgage, Patrick H. Drake, executed an agreement in writing as follows:

"Frederick Lewis, and Maria A. Lewis, his wife, both of the city of Binghamton, Broome county, N. Y., have this 4th day of June, 1873, executed and delivered to Patrick H. Drake, of the city and county of New York, a mortgage upon all their real estate situate in the said county of Broome, for sixty thousand ($60,000) dollars. The value of the property covered by the said mortgage is about one hundred thousand ($100,000) dollars. The intention of the undersigned by this said mortgage is to secure the said Drake against all liability he has or may have incurred as indorser for the said Lewis. The precise amount of such liability as such indorser is unknown but supposed to be about thirty-two thousand ($32,000) dollars. And also to secure the said Drake for advances which he is to make to liquidate and satisfy the large amount of judgments against the said Lewis, which are a lien upon the property covered by the said mortgage. The said Drake in the taking of the said mortgage only desires to secure himself for the amount of his liability as such indorser, and for the advances which he is to make in taking up and satisfying the judgments against the said Lewis. Anything more than this is not contemplated by the said Drake. When the amount of such liabilities and advances is ascertained or liquidated, then said Drake to indorse same or reduce said mortgage to the true amount so advanced by him. In case he shall assign or

part with the control of the said mortgage, he is to account to the said Lewis for the full amount that said Lewis may have to pay upon the same or which he will be liable to pay to the holder thereof. In the meantime the said Drake will take care of and protect the said Lewis and his property from the enforcement of any of the judgments against the said Lewis or his property, and save the property of the said Lewis from sacrifice and the said Lewis from damages and costs. And that he will at any time assign said mortgage to said Lewis' order upon being reimbursed on his advances in case he shall not have previously assigned the same.

" (Signed.) P. H. DRAKE."

The referee found that: " The execution and delivery of the said mortgage and the execution and delivery of the said agreement formed a single transaction between the said parties, and each was a consideration for the other." Jane E. Drake, the wife of Patrick H. Drake, was a sister of the mortgagor, Frederick Lewis, and at that time Lewis was financially embarrassed, and " was unable to procure ready money to pay his debts and obligations when payment thereof was demanded of him. Judgments were duly recovered and docketed against him, and promissory notes made by him were due and unpaid. Patrick H. Drake was the first indorser upon such notes, and was, by the due protest thereof, charged as such indorser." The referee found that on the 3d of July, 1875, the mortgagee commenced foreclosure of the mortgage by advertisement, and that the notice of sale of said mortgaged premises, among other things, stated, viz. : " And whereas, the amount claimed to be due on said mortgage at the time of the first publication of this notice is $68,750. Now, therefore, notice is hereby given that by virtue of the power of sale contained in said mortgage, and duly recorded as aforesaid, and in pursuance of the statute in such case made and provided, the said mortgage will be foreclosed by a sale of the premises therein described at public auction, at the front door of the Court House in the city of Binghamton," etc. Notices of such foreclosure were served upon the mortgagors and upon the other parties, and posted in accordance with the provisions of the statute. The sale was duly adjourned to the 6th day of November, 1875, and notice thereof given, and the referee finds " said mortgaged premises, in pursuance of such notice of sale and such notice of postponement,

were on the 6th day of November, 1875, and at the place and hour named in said notices, sold at public auction, or at public sale ; each parcel thereof was sold and bid off separately, and each of such mortgaged tracts or parcels was thereat sold and bid off by Patrick H. Drake, except the following described parcel " (then follows a description of a 250-acre lot), which the referee found " was sold to Giles W. Hotchkiss, he being one of the attorneys for the mortgagee." The referee found : " And the aggregate of the sums bidden therefor, and for which said mortgaged premises then and there sold, was $24,366." The referee also found : " Subsequent to June 4, 1873, and prior to the 3d day of July, 1875, the said Patrick H. Drake, under the provisions of said mortgage and agreement, advanced moneys for the liquidation and satisfaction of judgments against the said Frederick Lewis, which were a lien upon the property covered by the said mortgage of June 3, 1873, and prior to the 3d day of July, 1875, the said Drake paid notes of the said Lewis, upon which, on the 3d day of June, 1873, the said Drake had incurred liability as an indorser for the said Frederick Lewis." The referee then proceeded to state the amount of each of said judgments and notes, with a statement of interest thereon, due July 3, 1875, and then he found that " on the 3d day of July, 1875, the aggregate of the sums so advanced and paid by said Drake, in payment of such notes and judgments and taxes, with interest computed thereon, as stated, was $42,014.48." The referee found that prior in time " to the execution and delivery of the said mortgage by Frederick Lewis and Maria A. Lewis " there were judgments docketed in the clerk's office, and liens upon the mortgaged premises, " amounting to upwards of the sum of twenty thousand dollars, exclusive of interest. Subsequent to said foreclosure and sale, the said Patrick H. Drake paid or contributed to the payment of said judgments, and no one thereof has been at any time enforced against the said Lewis or his property." The referee also found that " prior to the said foreclosure of and sale under said mortgage, the aggregate amount so paid and advanced by the said Patrick H. Drake upon the notes of Frederick Lewis, upon which said Drake was liable as an indorser, and the judgments against Frederick Lewis, was not ascertained between the said Drake and Lewis, nor was there an offer on the part of said Drake, or a

demand on the part of the said Lewis, that such amount should be ascertained prior to such foreclosure and sale." During the trial Frederick Lewis died. Prior to his death he transferred and " conveyed to John B. Van Name all of his right, title and interest in and to the several parcels of land described in the said mortgage and complaint, and the cause of action described in said complaint for the purpose of transferring the same to the said Maria A. Lewis, the wife of Frederick, through the said Van Name, and all of such right, title and interest was by said Van Name transferred and conveyed by deed or writing, dated September 3d, 1883, to the said Maria A. Lewis." On March 25, 1890, an order was entered at Special Term " That this action be continued in the name of Maria A. Lewis as sole plaintiff, such order and the application therefor having been made subsequent to the death of the said Frederick Lewis." It is found that " The defendant, Virginia M. Drake, died January, 1884, leaving a last will and testament, in and by which she left her property to the defendant Julia R. Duane." That : " At the time of the commencement of the proceedings to foreclose the said mortgage, and of the sale of said mortgaged premises thereunder, the said Frederick Lewis and Maria A. Lewis had made default in the payment of the principal sum thereby intended to be secured, and in the payment of the interest thereof, whereby it became and was lawful for the said Patrick H. Drake to sell the said mortgaged premises or any part thereof in the manner prescribed by law, and out of all the moneys arising from such sale to retain the amount then due for principal and interest, together with the costs and charges of making such sales, and to pay the overplus, if any there might be, on demand to the said Frederick Lewis and Maria A. Lewis, their heirs and assigns."

He also found that by virtue of the proceedings to foreclose and the affidavits " the legal title, interest and ownership of the mortgagors, Frederick Lewis and Maria A. Lewis, in or of said mortgaged premises, was transferred and conveyed to the respective purchasers at said sale, and the equity of redemption therein of the mortgagors foreclosed and their right to redeem terminated."

And as matter of law, that " The plaintiff, Maria A. Lewis, is not entitled to the relief demanded in the complaint in this action,

or the right to maintain the same, or the right to redeem said mortgaged premises or any part thereof."

Exceptions were filed to several of the findings of fact and requests were made to find and refusals were made to certain requests and exceptions taken thereto. No opinion was written by the referee. The case contains all the evidence.

*Edward K. Clark,* for the appellant.

*Millard & Stewart,* for the respondent.

HARDIN, P. J.:

Plaintiff insists " that the statutory foreclosure was inoperative and the plaintiff has the right to redeem."

In *Jencks* v. *Alexander* (11 Paige, 626), it was said, viz.: " But a mere mistake in computing the amount due at the time of the first publication of the notice, does not of itself furnish any sufficient ground for setting aside the sale under the statute. The direction in the statute, that the notice of sale shall contain a statement of the amount claimed to be due upon the mortgage, was, undoubtedly, for the purpose of apprising the owners of the equity of redemption of the extent of the claim of the mortgagee, so that they might not be surprised at the sale by an unfounded claim for what had in fact been previously paid; and to enable them to apply to this court for relief, in due season, if the amount due could not be otherwise adjusted between the parties." A similar doctrine was laid down in *Bunce* v. *Reed* (16 Barb. 350). The effect of an error in the amount claimed to be due was under consideration in *Mowry et al.* v. *Sanborn et al.* (68 N. Y. 165), and the court observed: " Without considering whether the claim of a much larger amount to be due than was due, would, in the absence of fraud, invalidate the proceedings, we are of the opinion it does not appear that the amount claimed was more than was secured by the mortgage." In that case the mortgage was given, as the one before us, to secure commercial paper of the mortgagor. The case of *Ferguson* v. *Kimball* (3 Barb. Ch. 619) is unlike the one before us, as the mortgage under consideration in that case was conditioned for the support of the widow of the mortgagee, and was, therefore, " given as a security to cover unliquidated damages."

In *Klock* v. *Cronkhite* (1 Hill, 110), BRONSON, J., said : " But the statute imposes no penalty for claiming more than is really due ; and if such a claim could, under any circumstances, affect the validity of the sale, it certainly could not, in a case like this, where, if the plaintiff has in fact demanded too much, it has not resulted from a fraudulent purpose, but from a mistake concerning his legal rights." In the case in hand we are not furnished any evidence indicative of a fraudulent intent on the part of the mortgagee or his attorneys who conducted the foreclosure of the mortgage in inserting in the notice of foreclosure the principal sum mentioned in the mortgage, augmented by the interest thereon from the date of the mortgage to the time of the foreclosure ; and in the absence of averments of fraudulent intent and evidence that the amount inserted in the notice was swollen for the fraudulent purpose beyond the indebtedness of the mortgagors, we are not prepared to say that the foreclosure was inoperative, or that the sale in virtue of the statute and the power of sale found in the mortgage did not cut off the legal rights of the mortgagors in the premises covered by the mortgage. The mortgagors had personal notice and acquiesced in the sale, and yielded up possession of the premises to the purchasers at the sale.

In *Jackson* v. *Slater* (5 Wend. 296), it was said : " In this case the foreclosure was under the statute ; and that statute provides that every foreclosure made under it shall be an absolute bar of the equity of redemption, and shall have the like effect as if the mortgage had been foreclosed in a court of chancery by a decree against all parties in interest."

In *Ingraham* v. *Baldwin* (12 Barb. 20), it was said, viz.: " The statute foreclosure was equivalent to a decree in equity."

In *Warner* v. *Blakeman* (36 Barb. 518), it was said, viz.: " It is not a good answer to say that these statutory proceedings are not in court, and that the mortgagor is not required to contest them. The notice of such proceedings with a claim against him for a certain amount due upon the mortgage, at least imposes upon him the duty of notifying purchasers at the sale of his claim, or the duty of silence afterwards. If he will not speak when duty towards others requires it, he will not be permitted to speak afterwards, when his interest prompts him to do it."

In *Elliott* v. *Wood* (53 Barb. 305), it was said : " Undoubtedly courts of equity have always held that the equity of redemption is so inseparable from the mortgage, it cannot be disannexed even by an express agreement of the parties. But by statutes of the State, it has been long declared that mortgaged land can be sold by advertisement in all cases where the mortgage contains a power to the mortgagee, or any other person, to sell it, upon default being made in any condition of the mortgage. Every sale pursuant to such a power is declared to be equivalent to a foreclosure and sale under the decree of a court of equity. * * * The seventh section of the statute expressly declares that the mortgagee, his assigns, and his or their representatives, may fairly and in good faith purchase the premises at the sale."

In this case the referee has found that on the 3d day of July, 1875, " the aggregate of the sums so advanced and paid by said Drake in payment of such notes and judgments and taxes, with interest computed thereon as stated, was $42,014.48. No part of said aggregate sum had at said date been repaid to the said Drake by the said Lewis, or any person in his behalf." The referee also found " Each of said tracts or parcels was sold to the highest bidder and for the greatest sum bidden therefor, and the aggregate of the sums bidden therefor, and for which said mortgaged premises then and there sold, was $24,366. Said sale or sales was or were in all respects honestly and fairly conducted. And said Giles W. Hotchkiss purchased the premises bid off by him fairly and in good faith, and said Patrick H. Drake purchased each parcel of the premises bid off by him fairly and in good faith." The referee further found that the affidavits of the foreclosure of the said mortgage and of the sale thereunder " were, on the 11th day of February, 1876, duly filed in the office of the clerk of the county of Broome, and were on that day duly recorded in the office of said clerk in Book of Mortgages No. 51, at page 1. Said Frederick Lewis was present at said foreclosure sale and did not in any manner forbid such sale or object to the making thereof."

In *Hubbell* v. *Sibley* (5 Lans. 51 ; S. C. affd., 50 N. Y. 468), it was held by this court that " The statute providing for foreclosure of a mortgage by advertisement is to be complied with substantially, but with regard to the objects intended by it."

Attention has been given to *Burnet* v. *Denniston* (5 Johns. Ch. 35), which is unlike the case before us; there the advertisement under a power contained a false assumption "as that the premises are to be sold for default of three mortgages, when they were only two, the third being on other land, by which the public might be misled, or purchasers deterred from bidding;" and there was also another defect in that no place of sale was designated in the advertisement; and it also appeared "That the power inserted in the third mortgage thus intruded upon the public was void, for the mortgagor was not of twenty-five years of age when the mortgage was executed;" and it also appeared that the sale was made after a tender of the sum due upon the two mortgages; and by reason of such defects and imperfections the chancellor held the sale invalid. We see nothing in the case militating against the sale now under review.

Our attention is invited to *Soule* v. *Ludlow* (3 Hun, 503), in which case it was held that "A mortgagee in the execution, by advertisement, of the power of sale contained in his mortgage, is regarded as a trustee executing a power in trust, and is bound to conduct the proceedings in a fair and just manner and in good faith. Relief will be granted setting aside such proceedings upon the same grounds upon which a court would set aside a sale had under foreclosure by action." In that case a party had taken an assignment of a mortgage and a foreclosure "of a prior mortgage had taken place without service being made upon the assignee of the second mortgage, whose assignment had not been recorded," and under the circumstances disclosed it was said that the foreclosure "was a practical fraud upon him," inasmuch as the defendant "well knew that the plaintiff was the assignee and owner of said mortgage, for he had paid to him, or to his attorney, several installments of interest thereon, and knew that Goss had no interest in said foreclosure." Under such circumstances relief was given. We find nothing in the case that aids the position of the appellant.

In *Elliott* v. *Wood* (45 N. Y. 78), ALLEN, J., said: "But a mortgagee is not solely a trustee for the mortgagor, he is a creditor having interests to protect, and has rights which a naked trustee may not have. If it be conceded that a mortgagee with power of sale, being a trustee for sale, cannot either directly or indirectly, except

by the express authority of the mortgagor, purchase the mortgaged estate, still he may do so when such authority is conferred either by the terms of the power or in any other way." And he further adds, viz. : " Powers of sale are construed liberally for the purpose of effecting the general object, and neither the interest of the mortgagee or mortgagor will be advanced by forbidding purchases by the mortgagee. The security of the mortgagee would be less valuable and the mortgagor would lose the benefit of the competition of the mortgagee upon the sale." In the mortgage before us it was expressly stipulated, viz. : " This grant is intended as a security for the payment of the sum of $60,000 one year from date with interest * * * and in case default shall be made in the payment of the principal sum hereby intended to be secured, or in the payment of the interest thereof, or any part of such principal or interest, as above provided, it shall be lawful for the party of the second part, executors, administrators or assigns at any time thereafter, to sell the premises hereby granted, or any part thereof, in the manner prescribed by law," etc. We thus see there was ample power given by the mortgage to the mortgagee to make sale of the premises after the expiration of one year ; and section 7, 2 R. S. 546, provides as follows : " The mortgagee, his assigns and his or their legal representatives, may fairly and in good faith, purchase the premises so advertised, or any part thereof, at such sale ; " and section 8 provides that every sale " pursuant to a power * * * shall be equivalent to a foreclosure and sale under the decree of a court of equity."

In *Tuthill* v. *Tracy* (31 N. Y. 162), it was said : " It is the decree and sale, or the perfection of the statutory proceedings by a sale, that extinguishes such equity " of the interest of the mortgagor. Upon the evidence found, we are, therefore, of the opinion that under the power of sale and the statute in such cases made and provided the purchasers at the sale acquired legal title to the mortgaged premises.

*Second.* It is insisted in behalf of the appellant that a trust was created as to the real property of the mortgagors, and that, therefore, an accounting should be had. It is to be observed that the instrument signed by Drake first recited the fact that the mortgage was given as a security, and secondly it declared, viz. : " The intention of the

undersigned by this said mortgage is to secure the said Drake against all liability he has, or may have, incurred as indorser for the said Lewis." When that phraseology was prepared presumably it was expected that the paper should be executed by Lewis ; however, it never was executed by him ; it only bears the signature of Drake, the mortgagee. It further declares that the intent of the mortgage was "To secure the said Drake for advances which he is to make to liquidate and satisfy the large amount of judgments against the said Lewis, which are a lien upon the property covered by the said mortgage." That language is in harmony with the language found in the mortgage. The instrument then contains the following declaration : " The said Drake in the taking of the said ` mortgage only desires to secure himself for the amount of his liability as such indorser, and for the advances which he is to make in taking up and satisfying the judgments against the said Lewis." This language is in harmony with the language found in the mortgage, and simply indicates that Drake had taken security to indemnify him against any loss by reason of his indorsements and to reimburse him for any advances which he might make at the instance of Lewis. Then follows a clause, as follows : "Anything more than this is not contemplated by the said Drake." If we give full effect to that sentence, it is simply a declaration that he has taken the mortgage to indemnify him against any loss in the premises ; but it is insisted in behalf of the appellant that the right to foreclose the mortgage was dependent upon an ascertainment or liquidation of the indebtedness secured thereby. We think the instrument contains nothing making it a condition precedent to the right to foreclose that such ascertainment or liquidation should be first had. The language relating to that subject is as follows : " When the amount of such liabilities and advances is ascertained or liquidated, then said Drake to indorse same or reduce said mortgage to the true amount so advanced by him." This language only provides for an indorsement if the ascertainment or liquidation shall be determined before the maturity of the mortgage or before the same shall be foreclosed or pass from the hands of the mortgagee. Doubtless the mortgagor, upon a proper demand or a suit for that purpose, might have required an ascertainment of the amount advanced by Drake and ` an indorsement thereof upon

the mortgage at any time before the same was foreclosed, and perhaps a suit in equity for such purpose might have been maintained by Lewis at any time prior to the foreclosure.

Another clause is found in the instrument relating to a supposed possibility that the mortgagee might assign the mortgage, and it is stipulated that in case he does assign it or part with the control of it, "he is to account to the said Lewis for the full amount that said Lewis may have to pay upon the same or which he will be liable to pay to the holder thereof." As no assignment was made of the mortgage by Lewis, this language is inoperative upon the rights of the parties as to the property. It must be borne in mind that at the the time of the execution of this instrument several judgments were existing liens against the property of Lewis, and by reason thereof the instrument contained the following language : "In the meantime the said Drake will take care of and protect the said Lewis and his property from the enforcement of any of the judgments against the said Lewis or his property, and save the property of the said Lewis from sacrifice and the said Lewis from damages and costs." Perhaps a fair construction of the expression "In the meantime" would be to assume that until the mortgage matured, it was the duty of Drake to avoid a sale of the real estate upon the judgments. Apparently that was accomplished, and the property of Lewis was saved from sacrifice by sale upon such judgments. We find nothing in the language in the instrument which prevented the operation of the stipulations of the mortgage or restricted the right to enforce the mortgage by means of the power of sale contained therein. The last clause of the instrument which provided that the mortgagee should assign the mortgage "to said Lewis' order upon being reimbursed on his advances" doubtless would have required Drake to assign the mortgage if he had been reimbursed his advances prior to the foreclosure thereof. We are of the opinion, that reading the mortgage and the instrument together, they did not operate to place the legal title to the property in Drake, and that he did not per force of the stipulations in the two instruments become a trustee of the real estate ; that he sustained the relation of mortgagee to the property, and that the title to the property remained in the mortgagor until he was divested by the exercise of the power of sale given in the mortgage. Nor do we

think the papers constituted an express trust. (*Norris* v. *Schuyler*, 23 N. Y. St. Repr. 84; *The Farmers' Loan and Trust Co.* v. *Carroll*, 5 Barb. 615.)

This case is unlike *Slee* v. *Manhattan Company* (1 Paige, 48), and the principle there laid down is not applicable to the case. That was an assignment of the mortgage to the defendant as security for a debt, which mortgage was foreclosed by the assignee and the mortgaged premises were bid in by him for a sum less than the amount of the mortgage and less than the amount of the debt which the assignment was made to secure; and there the assignee was required on receiving the amount of the debt and interest to convey the mortgaged premises to the assignor, and the relief was granted upon the equitable rule " which forbids a trustee or person acting in a fiduciary capacity from speculating out of the subject of the trust." That case was explained and followed in *Hoyt* v. *Martense*, (16 N. Y. 231).

This case is unlike *Case* v. *Carroll* (35 N. Y. 385), as in that case the defendant was the attorney of the plaintiffs in relation to the bond and mortgage and their advisor as to the manner of obtaining and using them for the purpose of enabling them to obtain and give a clear title to the farm, and it was held that by reason of his confidential relations to the plaintiffs his purchase of the premises should be deemed to be for and in behalf of the plaintiffs, and that a trust was created " which a court of equity will enforce against the defendant by requiring him to convey the legal title (of the premises) to the plaintiffs, upon being paid what was necessarily expended by him in procuring such title."

In *Dalton* v. *Smith* (86 N. Y. 176) a bond and mortgage were assigned as collateral for a loan, and the mortgage was foreclosed by the lender without making the borrower a party thereto, and the mortgaged premises were bid in by the lender, and it was held that the equitable interest which the borrower obtained in the mortgage attached to the land, and that he was entitled to the surplus in case of a sale thereof by the lender for more than the amount of his claim. We find nothing in the case which aids the position of the appellant. A similar doctrine was laid down in *Gilbert* v. *Thayer* (5 N. Y. St. Repr. 673). In the latter case it was held that if the

assignee forecloses the mortgage without foreclosing the assignor's right and becomes a purchaser at the sale, he holds the lands as a substitute for the mortgage " and precisely as he held the latter and by no different or stronger title." We find nothing in either of the cases last cited which aids the contention of the appellant.

In *Williams* v. *Townsend* (31 N. Y. 415), it was said, viz. : " A mortgage is a mere security for a debt ; and there is no such relation of trust or confidence between the maker and holder of a mortgage as prevents the latter from acquiring title to its subject-matter, either under his own or any other valid lien." That case was referred to in *Ten Eyck* v. *Craig* (2 Hun, 464), and GILBERT, J., said : " We think, therefore, it is a misnomer to call a mortgagee a trustee of the mortgaged estate. He is a creditor having a lien."

Our attention is invited to *Terrett* v. *Crombie* (6 Lans. 82). In that case the defendant took a deed of building lots which were under a contract of sale and agreed with his grantor to make advances for building purposes to the purchaser and in due time convey to him and receive back mortgages, and, after deducting his advances and certain other sums and claims from the price under the contract, pay the surplus to the grantors by the second mortgages of the purchaser, and it was held that he was a trustee *sub modo* for the grantor, and was bound to convey the subject of the trust to her on payment of the amount due him, with expenses of management and interest, and until discharged from the trust, to hold, manage and preserve the property for the grantor. And it was also held that he could not divest himself of the character of trustee by becoming the purchaser of the property upon foreclosure sales in actions brought by himself upon the second mortgages, no settlement having been made with the grantor, and she not having been party to the action. And it was made a query in that case whether the fact would have been otherwise if the grantor had been a party to the foreclosure actions. The case differs very essentially from the one before us. We are of the opinion that neither the instruments nor the evidence disclosed upon the trial establish that Drake was a trustee for the mortgagors at the time of the foreclosure and sale and purchase by him of the premises covered by the mortgage. The power of sale was exercised in pursuance of its terms and in accordance with the statute and he became the pur-

chaser, and the referee has found, upon ample evidence, that he was a purchaser in good faith and the sale was regularly conducted, and that the affidavits were filed and recorded, showing the sale to have been conducted in accordance with the provisions of the statute. We think the effect of the sale was to cut off the mortgagor's interest in the property; that the legal title was, through the instrumentality of the sale, transferred to the purchasers at the sale, and that the right of redemption was extinguished. It is disclosed in the evidence that the purchasers at the sale went into possession under a claim of title, and the evidence indicates several acts on the part of the mortgagor and his wife in acquiescence, approval and ratification of the sale; and no satisfactory evidence is furnished to indicate that the purchasers at the sale in any way consented to hold the property acquired through the instrumentality of the sale as a security. Before such a position can be established, evidence must be given which is clear, unequivocal and convincing. (*Erwin* v. *Curtis*, 43 Hun, 292; *Ensign* v. *Ensign*, 120 N. Y. 655.) Considerable evidence was given tending to show that the mortgagors acquiesced in the sale. It appeared that on the 21st of March, 1876, Drake paid to one Phelps $31,874.45 for the judgments which were a lien on the property covered by the mortgage at the time of its execution and the accrued interest thereon, and on the fifteenth of March he sold the Lewis homestead to McKinney for $22,000, and in order to obtain possession of the premises on the twenty-second of March he commenced summary proceedings for the recovery of the possession of the premises, and on the return of the summons Lewis appeared in person and made no objection to the demand, and that judgment was given awarding the possession of the premises to Drake, who, on the 26th of March, 1877, was put into possession thereof, and on that day Lewis and his wife executed an instrument referring to the premises on the west side of Washington street as "formerly owned by me (Lewis) and now occupied by Patrick H. Drake * * * and purchased by him at a mortgage sale November 6th, 1875, * * * are hereby unqualifiedly surrendered to the said Patrick H. Drake and he is hereby put in full and uninterrupted possession thereof. * * *" That instrument was signed by Frederick Lewis and Maria A. Lewis. Other evidence appears indicative of the knowledge on

the part of Lewis of the sale and of the fact that Drake claimed to be the absolute owner of all the property which he had purchased at the foreclosure sale. Such acquiescence appears to have continued down to about the time of the commencement of this action in 1883. Upon the whole evidence, we are satisfied that at the time of the commencement of this action neither Lewis nor his successor in interest had any right in the real estate in law or equity, and that this action, so far as it seeks to redeem any portion of the property from the sale, was properly dismissed upon the merits.

*Third.* It is claimed that the referee fell into an error in finding that " Frederick Lewis was present at said foreclosure sale and did not in any manner forbid such sale or object to the making thereof." In the view we have taken of the case it is of no importance whether he was present at the sale or not. It does appear, however, that he had notice that the sale would take place at the time and place where it did take place, and that circumstances are disclosed which indicate that it is of no importance whether he was personally present and forbade the sale or not. Plaintiff was sworn in her own behalf, and in the course of her redirect-examination she testified that she was served with a notice of foreclosure, and she added, viz. : " Mr. Hotchkiss came and consulted with me about it ;" thereupon, the following question was propounded to her : " Q. Did Mr. Hotchkiss tell you or say to Mr. Lewis in your presence that the foreclosure should make no difference as to the agreement between Mr. Drake and Mr. Frederick Lewis ? " (It was conceded that Mr. Hotchkiss was dead.) Thereupon the defendant's counsel objected to the evidence, on the ground that she is not competent under section 829, and it was objected to on the further ground " that it is incompetent, improper and inadmissible." The objections were sustained, and the plaintiff took an exception. It does not appear clearly when the alleged conversation took place, whether it was before the sale or not ; nor does it appear that any transaction was taking place in regard to the property at the time of the supposed conversation.

In *Breck* v. *Ringler* (36 N. Y. St. Repr. 619), it was said : " An exception was also taken to the exclusion of a statement made by the attorney, Mr. Clapp. But as this was in the absence of the plaintiff and the attorney was not shown to be authorized to com-

promise him by any statement he might make, the evidence was rightly excluded." The reversal of this case (42 N. Y. St. Repr. 356) was upon other grounds.

In *Gutchess* v. *Gutchess* (66 Barb. 483), it was said: "The admissions of an agent are not admissible against the principal, unless made while he is performing some act for his principal, and in reference to the thing done." It did not appear that the proposed declaration of Mr. Hotchkiss was within the scope of his authority and that it would, therefore, bind the mortgagee. (Story on Agency, § 134; *Anderson* v. *R., W. & O. R. R. Co.*, 54 N. Y. 341; *White* v. *Miller*, 71 id. 118.)

In *Adee* v. *Howe* (15 Hun, 21), in delivering the opinion, BOARDMAN, J., said that an admission by an attorney "must be within the scope of the attorney's authority in the proceedings he is engaged in." We think the exception taken to the ruling is unavailing. Several exceptions are taken to the findings as made and to the refusals to find upon requests made by the plaintiff, and it is not deemed important to examine them in detail as the views already expressed, if adopted, lead to the conclusion that the referee's disposition of the case was proper; and we are of the opinion that his report should be sustained and the judgment be affirmed, with costs.

MERWIN, J., concurred.

MARTIN, J. (dissenting):

The mortgage given by Lewis and wife to Drake, and the contract signed by Drake, formed a single transaction or agreement between the parties, each being the consideration for the other. When read together, they disclose that the consideration mentioned in the mortgage at the sum of $60,000 was merely nominal and not the actual consideration therefor; that the mortgage was given upon property of the value of about $100,000, to secure the mortgagee against liability as indorser, the amount of which was unknown, but supposed to be about $32,000, and also to secure the mortgagee for such advances as he might make to satisfy any judgments that were a lien upon the property mortgaged.

The purpose of taking the mortgage was declared to be only to secure the mortgagee for his indorsements and any advances which

he might make in taking up and satisfying any judgments against the mortgagor, which were a lien upon the mortgaged property. The amount of such liabilities and advances was to be subsequently ascertained when the mortgagee was to reduce the mortgage to the actual amount paid and advanced. If the mortgagee assigned the mortgage, he was to account to the mortgagor for the full amount that he might have to pay upon the same, or which he would be liable to pay the holder thereof.

When these two instruments are construed together, I think it becomes quite manifest that the intent and purpose of the agreements between the parties was that the amount of such indebtedness should be ascertained and determined before the mortgage should be enforced against the property of the mortgagor. Until the amount was thus ascertained, clearly the amount due upon such mortgage was unliquidated. The proof discloses that the amount actually due upon the mortgage was at least $25,000 less than the amount stated in the notice of sale in proceedings to foreclose the mortgage by advertisement.

Taking into consideration the mortgage, the agreement signed by the mortgagee at the time the mortgage was given, and the evidence given before the referee, I am led to the conclusion that it was the intent of the parties that the amount due under such mortgage should be ascertained as provided in the agreement signed by the mortgagee, and either indorsed upon the mortgage, or the consideration thereof reduced to the actual amount of the mortgagor's indebtedness, before the same should be enforced against him, and that the mortgagee could not properly foreclose his mortgage by advertisement until the amount was liquidated between the parties. While this might, perhaps, have been done in an action to liquidate the amount and foreclose the mortgage for the amount found due, the mortgage could not, I think, be foreclosed by advertisement, where the amount, as in this case, was wholly unliquidated.

It also appears from the evidence that many, if not most, of the judgments against the mortgagor were not paid and satisfied by the mortgagee, but were procured to be assigned to his (the mortgagee's) wife, so that when the foreclosure was had, the principal amount due upon the mortgage was the amount paid upon notes which had been indorsed by the mortgagee. It is, therefore, obvious that the

statement contained in the notice of sale was neither actually nor substantially correct.

The evidence also discloses that on July 23, 1873, the mortgagor paid to the mortgagee $5,000, to be paid by him on the liabilities of the mortgagor. On November 15, 1873, he received from the mortgagor, through Bosworth & Company, the sum of $4,725, which was used by the mortgagee in purchasing a judgment against the mortgagor.

There is other testimony in the case showing quite plainly that, before the amount due upon the mortgage could be ascertained, a careful accounting between the parties was necessary, and that a proper liquidation of the amount due under the provisions of the mortgage required the taking of proof as to the payments and receipts by the mortgagee, and something more than a mere calculation was necessary. I am of the opinion that the proceeding to foreclose this mortgage was premature, as the right to enforce it did not exist until the amount of the mortgagee's liabilities was ascertained or liquidated, the mortgage reduced by indorsement or otherwise to the correct amount secured thereby, and that the statement of the amount due in the notice of sale was so erroneous as to invalidate the proceeding as between the parties.

The statement in the notice of sale as to the amount due was not mistaken or inadvertent, but false, and must have been known to the mortgagee to be so, and rendered the proceeding invalid and the sale thereunder void as between the parties. (*Burnet* v. *Denniston*, 5 Johns. Ch. 35, 42.)

In *Soule* v. *Ludlow* (3 Hun, 503, 505), it is said : " Relief will be given by suit to set aside foreclosure proceedings by advertisement whenever by any fraud, mistake, deceit or unfair contrivance or practice or bad faith, in conducting the proceedings of the foreclosure or sale, the rights of the mortgagor or of subsequent incumbrancers have been injuriously affected upon pretty much the same grounds as the court would recognize as sufficient for opening the sale if the foreclosure had been by action."

A mortgage cannot be foreclosed by advertisement, where it is given to secure an unliquidated amount. (*Ferguson* v. *Kimball*, 3 Barb. Ch. 616, 619 ; Jones on Mortgages [4th ed.], § 1776 ; *Wilkins* v. *Gordon*, 11 Leigh [Va.], 547.)

The appellant does not seek by this action to disturb the title ot any *bona fide* purchaser of the real estate sold under the pretended foreclosure. The property was bid off by the mortgagee, or his attorney, who was conversant with all the facts relating to the transaction between the parties. It is an action for an accounting and recovery of the possession from the heirs of the mortgagee of the property sold, which has not passed into the hands of purchasers in good faith, upon the payment of the amount that shall be found due the mortgagee, after deducting the amount he has received from the property sold to purchasers in good faith.

The statute in operation when this mortgage was foreclosed, like the present statute, provided that every sale made to a purchaser in good faith should be equivalent to a foreclosure and sale under a decree of a court of equity, so far only as to be an entire bar of all claim or equity of redemption of the mortgagor or his heirs, etc Therefore, under this statute, the mortgagee was protected against the mortgagor's equity of redemption only so far as he, or those claiming under him, were purchasers in good faith.

On the trial the plaintiff offered to prove by her own testimony, that Mr. Hotchkiss, who was one of the defendant's attorneys and served the notice of the mortgage sale upon her, said to the mortgagor at the time and in her presence, that the foreclosure should make no difference as to the agreement between Mr. Drake and Mr. Lewis. This evidence was objected to on the ground that the plaintiff was not competent, under section 829 ; that it already appeared that Mr. Hotchkiss was acting for Mr. Drake, and on the ground that it was incompetent, improper and inadmissible. It was conceded that Mr. Hotchkiss was dead at the time of the trial. It is quite clear, I think, that the purpose of this evidence was to show that the agent and attorney, when engaged in the transaction of the business of the mortgagee, stated to the mortgagor that his rights in the property mortgaged should not be changed to his disadvantage by a foreclosure and sale under the mortgage. If this evidence was admissible, it was important evidence in favor of the plaintiff, when considered in connection with the transaction which had previously taken place between the parties, and the situation of their affairs at the time of such foreclosure. That the evidence was competent, proper and admissible, unless prohibited by section 829, is, I think,

quite obvious. It was the statement of the mortgagor's attorney and agent, who had the entire charge and management of the mortgagee's business and affairs which related to the taking of this mortgage and to its foreclosure, while engaged in the act of foreclosing the mortgage, and related to the rights of the parties upon such foreclosure.

" Whenever an agent makes a business arrangement or does an act representing his principal, what he does in respect to the arrangement or act, while it is in progress, is so far part of the *res gestæ* as to be subsequently admissible in evidence on behalf of either party. Whenever the agent's acts are so admissible, then his contemporaneous declarations, explanatory of these acts, are admissible, nor in proving such declarations is it necessary that he should be himself called." (Whart. on Ev. [3d ed.] § 1173. See, also, opinion of EARL, J., in *Anderson* v. *R., W. & O. R. R. Co.*, 54 N. Y. 340 ; *Merchants' Bank* v. *Griswold*, 72 id. 472, 480 ; *North River Bank* v. *Aymar*, 3 Hill, 262.) Therefore, if it was admissible under section 829, the referee erred in excluding the evidence. It seems to be settled that section 829 does not apply to transactions and communications with the agents of a deceased person, although both the agent and the principal are dead. (*Hildebrant* v. *Crawford*, 65 N. Y. 107.)

I am of the opinion that the learned referee erred in excluding the evidence offered, as it was of such a character, that with the other circumstances and proof in the case, it might well have justified a determination of the case in the plaintiff's favor. If such was the arrangement under which the mortgage was foreclosed, it might well be claimed by the plaintiff that the defendant's intestate purchased and held the property in question as a trustee for the mortgagor, and that upon receiving the amount of his mortgage debt, the mortgagee was liable to account to the plaintiff for the property remaining in his hands.

I think the judgment should be reversed and a new trial ordered, with costs to abide the event.